

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00490-CV

**IN THE INTEREST OF U.D.R.** and J.T.F., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA00460
Honorable Richard Garcia, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Jason Pulliam, Justice

Delivered and Filed: November 16, 2016

AFFIRMED

This is an appeal from a trial court's order terminating appellant mother's ("Mother") rights to her children, U.D.R., and J.T.F. On appeal, Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interests of the children. We affirm the trial court's termination order.

## BACKGROUND

The record shows the Texas Department of Family and Protective Services ("the Department") first became involved with Mother in 2010. In 2011 and 2012, Mother's rights to three other children — all under the age of five — were terminated. Later, in March 2016, the Department was advised that Mother had given birth to J.T.F., who tested positive at birth for opiates and methamphetamines. The Department opened a family-based case; Mother was

permitted to retain possession of J.T.F. and his older sister, U.D.R. Approximately two months after J.T.F.'s birth, Mother brought him to the hospital. J.T.F. was suffering from a severe case of dermatitis, i.e., cradle cap. In addition, hospital personnel noticed that Mother could not stay awake, even during their conversations with her. The Department was contacted and after a caseworker saw J.T.F. and spoke to Mother, who admitted to illegal drug use, the Department removed both children, placing them in foster care.

The Department prepared a service plan for Mother with a stated goal of reunification. The trial court held the statutorily-required status and permanency hearings. Ultimately, the Department moved to terminate Mother's parental rights. After a final hearing, at which Mother appeared by appointed counsel, the trial court determined her parental rights should be terminated.[1] The trial court found Mother: (1) knowingly placed the children or allowed the children to remain in conditions that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with someone who engaged in conduct that endangered their physical or emotional well-being; and (3) had been the cause of a child being born addicted to alcohol or a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (R) (West Supp. 2016). The trial court further found termination of Mother's parental rights would be in the children's best interests. *See id.* § 161.001(b)(2). Accordingly, the trial court rendered an order terminating Mother's parental rights. Thereafter, Mother perfected this appeal.

## ANALYSIS

On appeal, Mother does not challenge the evidence with regard to the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1)(D),

---

[1] Before the bench trial began, counsel for Mother announced "not ready," stating he had no contact with Mother, suggesting she might not have been properly served. The trial court reviewed the case filings and noted Mother was properly served pursuant to Rule 106. *See* TEX. R. CIV. P. 106. The trial court overruled the "not ready" announcement and proceeded to trial. Mother has not raised an appellate issue alleging lack of service.

(E), (R).  Rather, Mother contends only that the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interests of U.D.R. and J.T.F.  *See id.* § 161.001(b)(2).

### *Standard of Review*

A parent's right to her children may be terminated upon proof by clear and convincing evidence that: (1) the parent committed an act prohibited by section 161.001(b)(1) of the Code; and (2) termination is in the best interest of the child.  *Id.* § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re B.R.*, 456 S.W.3d 612, 615 (Tex. App.—San Antonio 2015, no pet.).  "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *B.R.*, 456 S.W.3d at 615. Because termination of parental rights results in permanent and unalterable changes for both parent and child, courts have held due process is implicated, requiring the use of the heightened clear and convincing standard of review.  *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015); *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied).  Given the foregoing, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that termination was in the child's best interest.  *A.B.*, 437 S.W.3d at 502; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

In reviewing a legal sufficiency challenge in termination cases, we view the evidence in the light most favorable to the trial court's findings and judgment, and resolve any disputed facts in favor of the trial court's findings if a reasonable fact finder could have so resolved them.  *Id.* We must disregard all evidence that a reasonable fact finder could have disbelieved and consider undisputed evidence even if such evidence is contrary to the trial court's findings.  *Id.*  In other

words, we consider evidence favorable to termination if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.*

In a factual sufficiency review, we still give due deference to the trier of fact's findings, avoiding substituting our judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

When conducting a sufficiency review, we may not weigh a witness's credibility — as it depends on appearance and demeanor; these are within the domain of the trier of fact. *J.P.B.*, 180 S.W.3d at 573. Even if evidence regarding appearance and demeanor are found in the appellate record, we must nevertheless defer to the fact finder's reasonable resolutions. *Id*.

### *Applicable Law*

In *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976), the Texas Supreme Court set forth factors a court could consider when making a best interest determination:

(1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the individuals seeking custody;
(5) the programs available to assist these individuals to promote the best interest of the child;
(6) the plans for the child by these individuals or by the agency seeking custody;
(7) the stability of the home or proposed placement;
(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(9) any excuse for the acts or omissions of the parent.

*Id*. However, these considerations, which are commonly referred to as "the *Holley* factors," are not the only factors a court may consider. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Moreover, a court need not find evidence of each and every factor before terminating the parent-child

relationship. *See id.* As stated in *C.H.*, "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* And, as this court has recognized, in conducting our review of a trial court's best interest determination, we focus not on the best interest of parent, but on the best interest of the child. *In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.).

Although proof of acts or omissions under section 161.001(b)(1) of the Texas Family Code does not relieve the Department from proving the best interest prong, the same evidence may be probative of both issues. *C.H.*, 89 S.W.3d at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)); *B.R.*, 456 S.W.3d at 615. In conducting a best interest analysis, courts may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *B.R.*, 456 S.W.3d at 616 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Additionally, a fact finder may judge a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

There is a strong presumption that maintaining the parent-child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, we also presume that permanently placing a child in a safe environment in a timely manner is in the child's best interest. *B.R.*, 456 S.W.3d at 615; *see* TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016). In determining whether a parent is willing and able to provide the child with a safe environment, courts should consider the factors set out in section 263.307(b) of the Code, which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether

the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in, or returning to, the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b); *see In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (citing *In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.)); *B.R.*, 456 S.W.3d at 615.

### *The Evidence*

In our review, we have considered the *Holley* factors and the statutory factors in section 263.307(b) of the Code. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley*, 544 S.W.2d at 371–72. We have also considered the acts or omissions as found by the trial court under section 161.001(b)(1) of the Code, as well as the circumstantial evidence, subjective factors, and the totality of the evidence. *See In re R.S.D.*, 446 S.W.3d 816, 820 (Tex. App.—San Antonio 2014, no pet.).

At the final hearing, the Department called three Department caseworkers: (1) Jennifer Ovalle; (2) Angie Steinau; and (3) Kimletta Bates. No other witnesses testified. These witnesses provided testimony relating to the *Holley* factors and the statutory considerations set out in section 263.307(b) of the Code.

1.  *Desires of the Child*

At the time of trial, U.D.R. was seventeen-months-old and J.T.F. was seven-months-old. Thus, neither child was able to express their desires regarding conservatorship. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. However, the trial court was entitled to consider testimony regarding his current placement and the time spent with Mother in evaluating the children's desires. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). As the Fourteenth Court of Appeals stated, "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 108 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Ms. Ovalle testified that since the children were removed in March 2016, they have not seen Mother. Mother has not had any contact with the children. The children have been together with the same foster family since the removal and according to Ms. Ovalle, they are doing well in their current placement.

2.  *Emotional & Physical Needs/Emotional & Physical Danger*

Both children are very young and will require constant emotional and physical support for many years. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72; *In re J.G.M.*, No. 04-15-00423-CV, 2015 WL 6163204, at *3 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem op.). Their ages render them vulnerable if they are left in the custody of a parent

who is unable or unwilling to protect them and attend to their needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72; *J.G.M.*, 2015 WL 6163204, at *3.

Mother's inability or unwillingness to protect her children — thereby placing them in physical or emotional danger — was demonstrated by the fact that J.T.F. was born addicted to drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (whether there is history of substance abuse by child's family or others who have access to child's home); *id.* § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. Mother admitted at the time of J.T.F.'s birth that she was using illegal drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Additional evidence is found in testimony regarding the severity of J.T.F.'s dermatitis or cradle cap. *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. According to Ms. Ovalle, the two-month-old baby's condition was severe. Ms. Bates, who was the removing caseworker, testified the rash was "really bad," covering the boy's head, face, and ears. She too described the condition as severe. Moreover, when Ms. Bates arrived at the hospital, Mother was "sleeping" on a couch in the baby's hospital room, but Ms. Bates was unable to wake her. When she was eventually able to speak to Mother, she advised Mother there were concerns about possible drug use and asked Mother to take a drug test. Mother responded by stating it "was ridiculous" and "not fair." However, Mother soon admitted she had been using "crystal meth" not long before bringing J.T.F. to the hospital. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

In addition, Mother has not challenged the trial court's findings that she: (1) knowingly placed the children or allowed the children to remain in conditions that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with someone

who engaged in conduct that endangered their physical or emotional well-being; and (3) had been the cause of a child being born addicted to alcohol or a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (R). Although this does not relieve the Department from proving termination is in the best interests of the children, the termination grounds are probative on the issue of their best interests and shows Mother's propensity for placing her children in dangerous situations. *See C.H.*, 89 S.W.3d at 28; *B.R.*, 456 S.W.3d at 615; *see also* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

There was also testimony about Mother's past involvement with the Department. *See* TEX. FAM. CODE ANN. § 263.307(b)(2) (frequency and nature of out-of-home placements); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. According to Ms. Steinau, who was Mother's caseworker in 2012, Mother's rights to three other children — all under the age of five — were previously terminated from 2010 to 2012 in two separate cases. Each case involved allegations of drug use by Mother, as well as allegations of domestic violence. Ms. Steinau told the trial court Mother has a pattern of behavior with regard to drug use and domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services and cooperate with and facilitate agency's close supervision); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable time); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. And in those cases, as here, Mother failed to participate in her service plan or otherwise cooperate with the Department. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Although an act or omission from the past does not automatically prove termination is currently in a child's best interest, the trier of fact is entitled to measure a parent's future conduct by his or her past conducting in making a best-interest determination. *In re J.F.B.*, No. 04-15-00234-CV, 2015 WL 5837852, at *2 (Tex. App.—San

Antonio Oct. 7, 2015, pet. denied) (mem. op.). Thus, Mother's prior history with the Department and previous drug use was a proper consideration for the trial court in making its determination as to the best interests of the children. *See id.*

Mother's prior and continuing choices portend future instability, thereby endangering her young children. *See B.R.*, 456 S.W.3d at 616. The trial court was entitled to infer from her recent prior conduct, that similar conduct would recur, i.e., that she would continue to use and seek out drugs. *See B.R.*, 456 S.W.3d at 616. The danger of continued drug use and Mother's refusal to accept or seek help, creates instability and physical and emotional danger for U.D.R. and J.T.F. should they be reunited with Mother.

   *3. Parenting Abilities/Available Programs*

The evidence of drug use and Mother's continued failure to resolve her drug problem, which has existed for at least the past six years, is also relevant to Mother's inability to properly parent. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mother chose to use drugs, subjecting her youngest child to the effects of her choice. And it can be inferred that a parent who is unable to stay awake during discussions with hospital personnel regarding her child's care due to drug use, would likely be unable to provide proper care or supervision for her young children at home. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

The Department created a service plan tailored for Mother's needs and the trial court adopted the plan as a requirement for reunification. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. Ovalle testified she visited Mother at a rehabilitation center where Mother was being treated from a staph infection she contracted from using needles to inject heroin. Ms. Ovalle stated she read the entire plan to Mother, going over it line by line. Mother signed the service plan and it was filed with the court. Mother was required

to complete a drug assessment and any treatment recommended thereafter. The service plan further mandated that she complete parenting classes and individual therapy. However, after that meeting, Ms. Ovalle never saw Mother again. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

### 4. *Plans for Child by Those Seeking Custody/Stability of Home or Proposed Placement*

Mother's lack of stability is demonstrated by the evidence of her continued drug use, her inability to provide care for her children, and her refusal to complete or even attempt to complete a single requirement of her service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

In addition, it seems Mother has no familial or other support system. *See* TEX. FAM. CODE ANN. § 263.307(b)(13) (whether adequate support social system consisting of extended family and friends is available); *Holley*, 544 S.W.2d at 371–72. When asked about family members that might potentially take the children, Mother referred to her paternal grandparents, who have two of her other children. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72. However, Ms. Ovalle testified that placement would not be suitable because the Department has an ongoing investigation with regard to the grandparents.

U.D.R. and J.T.F. were, at the time of trial, in a foster home together. *See Holley*, 544 S.W.2d at 371–72. Although this home is not a potential adoptive home, the children are at this time doing well in the home and the family is willing to continue to care for the children until a permanent placement is found. *See id.* U.D.R. is currently in speech therapy twice a week and J.T.F.'s dermatitis has been resolved. *See id.* The Department intends to find a suitable foster-adoptive home for the children. *See id.*

5.  *Acts or Omissions Indicating Parent-Child Relationship Not Proper/Excuses*

The evidence of acts or omissions by Mother that indicate she had an improper relationship with her children are those set forth above in our discussion of Mother's acts that physically and emotionally endangered them, particularly Mother's continued drug use. *See Holley*, 544 S.W.2d at 371–72. Additional acts or omissions are detailed in our discussion of her lack of parenting abilities and failure to accept services. No evidence was presented — given Mother's absence from the final hearing — regarding any excuses for her behavior toward her children. *See id.*

### *Summation*

Mother exposed her children to her own drug use, endangering their physical and emotional well-being. She failed to complete even a single requirement of her service plan and her whereabouts are currently unknown. Despite service, she has contacted neither the Department nor apparently, her court-appointed attorney. Mother's actions in this matter — and in her prior dealings with the Department — suggest continued dysfunction and instability. *See B.R.*, 456 S.W.3d at 616; *M.R.*, 243 S.W.3d at 821 (holding evidence of parent's unstable lifestyle can support fact finder's conclusion that termination is in child's best interest).

Therefore, based on the foregoing, we hold the relevant *Holley* factors, as well as those set out in section 263.307(b) of the Code, weigh in favor of a finding that termination was in the best interests of U.D.R. and J.T.F. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley*, 544 S.W.2d at 371–72. Recognizing that in conducting a best interest analysis, the trial court was permitted to (1) consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, and (2) judge Mother's future conduct by her past conduct, we hold the trial court was within its discretion in finding termination of Mother's parental rights would be in the best interests of the children. *See B.R.*, 456 S.W.3d at 616. In other words, the

evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the best interests of U.D.R. and J.T.F. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

We hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find termination was in the best interest of U.D.R. and J.T.F. Accordingly, we hold the trial court did not err in terminating Mother's parental rights, overrule Mother's sufficiency complaints, and affirm the trial court's termination order.

Marialyn Barnard, Justice